# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JASON MULLEN, | ) | |
| | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | **NO.  4:21-40116-TSH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| DEPARTMENT OF CORRECTIONS OF | ) | |
| MASSACHUSETTS, CHRISTOPHER | ) | |
| PHILLIPS, JAMES GEARIN, WILLIAM | ) | |
| STNAHOPE, JAMES TETREAULT, | ) | |
| NICHOLAS CARPENO, ERICK | ) | |
| COLSTON, MATTHEW BADJO, and | ) | |
| DAVID BOURGEOIS, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO DISMISS (Docket No. 19)

**November 28, 2022**

**HILLMAN, D.J.**

Jason Mullen ("Plaintiff") filed this action against the Massachusetts Department of

Corrections ("DOC"), Acting Superintendent Christopher Phillips[1] ("Superintendent Phillips"),

Lieutenant James Gearin ("Lieutenant Gearin"), IIPS Officer William Stanhope ("Officer

Stanhope"), Sergeant James Tetreault ("Sergeant Tetreault"), Correctional Officer Nicholas

Carpeno ("Officer Carpeno"), Correctional Officer Erick Colston ("Officer Colston"),

Correctional Officer Matthew Badjo ("Officer Badjo"), and Correctional Officer David

---

[1] Plaintiff refers to this defendant as "Phelps" throughout the complaint. The Court assumes the name on the docket is correct.

Bourgeois ("Officer Bourgeois"), (collectively, "the defendants") alleging various federal civil rights claims and common law tort claims arising from an incident on November 21, 2018.[2]

Defendants move to dismiss all claims. (Docket No. 19). For the following reasons, the Court ***grants in part*** and ***denies in part*** the motion.

## Background

The following facts, taken from the complaint, are accepted as true. *See Rosenberg v. City of Everett*, 328 F.3d 12, 15 (1st Cir. 2003). The plaintiff is incarcerated at Souza-Baranowski. (Comp. at ¶ 8). In January 2017, the plaintiff participated in a riot at Souza-Baranowski, after which he was transported to MCI – Walpole, charged criminally, and faced disciplinary actions. (*Id.* at ¶¶ 18-23). Upon his return to Sousa-Baranowski in the summer of 2018, the plaintiff was regularly threatened by correctional officers for his participation in the riot, including by Officer Carpeno. (*Id.* at ¶¶ 26-30).

On November 21, 2018, the plaintiff was removed from his cell and brought to the non-contact visiting area and put in a temporary 4' x 6' cell while his cell was inspected. (*Id.* at ¶¶ 32-33). Officer Stanhope informed Mullen that scratch marks were found on the floor of the cell and the plaintiff was informed he would be restrained and escorted to the special management unit. (*Id.* at ¶¶ 34-35). The plaintiff protested and said there were no scratch marks. (*Id.* at ¶ 36). Five minutes later, Officer Stanhope returned with a video camera and the "Move Team" including Lieutenant Gearin, Sergeant Tetreault, Officer Carpeno, Officer Colston, Officer

---

[2] Counts I and V of the complaint allege failure to provide medical care against DOC, Count II alleges excessive force against Officers Carpeno and Colston, Sergeant Tetreault and Superintendent Phelps, Count III alleges a duty to intervene against Lieutenant Gearin, Sergeant Tetreault, and Officers Stanhope, Badjo, and Bourgeois, Count IV alleges inadequate investigation against DOC, Count VI alleges assault and battery against Officers Carpeno and Colston, and Count VII alleges intentional infliction of emotional distress against Officers Carpeno and Colston.

Badjo, and Officer Bourgeois. (*Id.* at ¶¶ 38-40). Officer Stanhope contacted Superintendent Phillips and requested the use of force including oleoresin capsicum ("O.C.") spray, which Superintendent Phillips granted. (*Id.* at ¶¶ 42-43). Sergeant Tetreault used O.C. spray, which disabled the plaintiff. (*Id.* at ¶ 44). Although the plaintiff alleges he offered no resistance, Officers Carpeno and Colston knocked the plaintiff to the floor then placed him in handcuffs and leg irons. (*Id.* at ¶¶ 45-49). After the plaintiff was secured in handcuffs and leg irons, Officers Carpeno and Colston both punched Mullen in the head 15-20 times, knocking the plaintiff unconscious. When he regained consciousness, Officers Carpeno and Colston were still punching him in the head. (*Id.* at ¶¶ 50-53). The other members of the move team did not intervene. (*Id.* at ¶¶ 54-55). When Officers Carpeno and Colston eventually stopped beating him, a gurney was required to move the plaintiff out of the room and into the medical ward and while on the gurney, he lost consciousness. (*Id.* at ¶¶ 56, 61-62). The plaintiff alleges Officer Stanhope averted the camera to avoid capturing the beating. (*Id.* at ¶ 93).

In the medical ward, the plaintiff was eventually revived. (*Id.* at ¶¶ 63-65). The plaintiff complained of blurry vision in his right eye and was informed by the medical staff that his injuries were serious, and a nurse told him that an ambulance was coming. (*Id.* at ¶¶ 67-69). Lieutenant Gearin[3] escorted the nurse away from the plaintiff's earshot, and when the nurse returned the plaintiff was informed the ambulance was cancelled. (*Id.* at ¶¶ 70-71). After the ambulance was cancelled, the medical staff did not re-check the plaintiff's eyes or vital signs and he was left in a bed in a cell in the medical ward. (*Id.* at ¶¶ 73-75). The next day, November 22,

---

[3] In this paragraph of the complaint, plaintiff refers to the defendant as "Geurin." The Court assumes, based on the defendants' brief and the use of the name "Gearin" throughout the complaint, including in a reference to this event later in the complaint, that this is a typo.

2018,[4] the plaintiff was discovered unconscious in his own vomit and, being unable to revive him, medical staff contacted an ambulance and the plaintiff was transported to Leominster Hospital. At the hospital, staff informed him he should have been transported the previous evening. (*Id.* at ¶¶ 76-79).

On November 28, 2018, the plaintiff filed an Inmate Grievance Form complaining of the attack. (*Id.* at ¶ 89). An investigation was conducted, and it was determined there was no evidence to support the plaintiff's allegations. (*Id.* at ¶¶ 90-91, 98). Those reports determined that the plaintiff's injuries were "non-serious," and did not include the detail that the plaintiff was found unconscious in his own vomit. (*Id.* at ¶¶ 95-96).

As a result of the use of force, the plaintiff sustained a 2-to-3-inch gash above his left eye, ecchymosis of the left eye, ten to twelve large hematomas on the top, side, and back of his head, significant bruising on the side and back of the head, and a swollen and bruised ear. (*Id.* at ¶ 66). The plaintiff experienced a lack of vision in his left eye as well as pain and headaches. (*Id.* at ¶ 80). After his requests for medical assistance were initially rejected, he was eventually transported to Boston Medical Center ("BMC") on December 16, 2019. (*Id.* at ¶¶81-84). The medical staff at BMC noted his difficulties seeing, ordered an MRI on his "orbits," and ordered a return visit within six months. (*Id.* at ¶¶ 85-87). The plaintiff was brought to Shattuck Hospital where MRIs were conducted on his brain, not his orbits, and he has not been brought back to see an eye doctor since. (*Id.* at ¶¶ 86, 88, 108). The plaintiff maintains he still suffers from physical pain, worsening vision in his left eye, and psychological trauma. (*Id.* at ¶¶ 106-107).

The plaintiff alleges that it is the functional policy of the DOC to not conduct neutral or complete investigations of grievances, to not interview third parties, and to allow officers under

---

[4] The complaint indicates the "next day" was "November 22, 2021"; the Court understands this to be a typo given that he filed this complaint on November 20, 2021.

investigation to work while investigations are ongoing with detainees who have pending grievances against them. (*Id.* at ¶ 105). The plaintiff further alleges that DOC does not adequately punish personnel when charges of excessive force are proven, and does not support medical personnel's decisions to transport detainees injured by excessive force to outside hospitals. (*Id.*).

### **Standard of Review**

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### **Analysis**

*1. Official and personal capacities under 42 U.S.C. § 1983.*

Plaintiff has sued the individual defendants in both their official and personal capacities. Defendants argue they can only be sued in their personal capacities, not their official capacities, under § 1983. That is true for damages under § 1983, but not injunctive relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989). Therefore, if there is valid injunctive relief

requested against a defendant, the suit must be allowed to go forward against them in their official capacity.[5]

The request for injunctive relief against the individual defendants is to "[p]ermanently enjoin and prohibit the Defendants from interfering with Plaintiff['s] constitutionally and statutorily protected right to adequate medical care." The complaint does not allege that the individual defendants have continued to deny the plaintiff care after November 21, 2018. More importantly, it does not allege that any of them have the power to deny his requests for follow-up vision care. Regardless of the violations they may have committed, the Court has no power to order a defendant to comply with the Constitution absent an ongoing violation or a clear threat of a future violation. *Efreom v. McKee*, 46 F.4th 9, 21-22 (1st Cir. 2022); *American Postal Workers Union v. Frank*, 968 F.2d 1373, 1376-77 (1st Cir. 1992). The harm alleged by the plaintiff is the ongoing denial of medical care, which a careful reading of the complaint shows is not attributable to any of the individual defendants.

Therefore, the Court *grants* the individual defendants' motion to dismiss the claims against them in their official capacity.

The plaintiff also alleges "*Monell*" violations against the DOC and requests injunctive relief and damages. However, claims under § 1983 are only available against "local government units which are not considered part of the State for Eleventh Amendment purposes." *Will*, 491 U.S. at 70 (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 54 (1978)). State agencies, including the DOC, are not proper defendants under § 1983, whether the relief requested is compensatory or injunctive. *Poirier v. Mass. Dep't of Correction*, 558 F.3d 92, 97 (1st Cir. 2009). To be clear, this doctrine does not foreclose the relief the plaintiff seeks. He

---

[5] Because there are no valid claims for injunctive relief, there is no need to address the arguments the defendants make about compliance with the Prison Litigation Reform Act.

could have named the appropriate DOC officials in their personal or official capacity to bring claims for damages or injunctive relief, respectively. *Hafer v. Melo*, 502 U.S. 21, 27-28 (1991); *Will*, 491 U.S. at 71 n. 10; *see, e.g.*, *Poirier*, 558 F.3d at 94 (naming the commissioner of the DOC as a defendant). Because this suit is not brought pro se, the Court cannot rename the proper defendants for the plaintiff.

Therefore, the Court *grants* the motion to dismiss all claims[6] against the DOC.

    *2.  Eighth Amendment Excessive Force and Common Law Assault Claims*

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." The defendants do not dispute they were acting under color of law. Therefore, the analysis below is limited to the violations.

The plaintiff alleges violations of the "Fourth and Fourteenth Amendments." However, excessive force claims brought by incarcerated individuals against prison officers are to be brought under the Eighth Amendment's prohibition on cruel and unusual punishment, not the Fourteenth or Fourth Amendment's Due Process Clauses. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). However, "[p]leadings must be construed so as to do justice." F.R.C.P. Rule 8(e). Given that the parties have correctly briefed the Eighth Amendment case law, the Court will move forward with an Eighth Amendment analysis on the primary claims.

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components -- one subjective, focusing on the defendant's motive for his conduct, and the other

---

[6] Count Five alleges a policy of failing to provide medical care only against the DOC, but plaintiff alleges a similar claim against Lieutenant Gearin in his brief opposing the motion to dismiss. The plaintiff may not amend his complaint in his brief, especially after the deadlines in Rule 15 have passed. Therefore, the Court does not analyze this hypothetical claim.

objective, focusing on the conduct's effect." *Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019)

(citing *Wright v. Goord*, 554 F.3d 255, 258 (2d Cir. 2009)). The objective prong requires the

plaintiff to show "the alleged wrongdoing was objectively harmful enough to establish a

constitutional violation." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "The subjective

prong turns on 'whether force was applied in a good faith effort to maintain or restore discipline

or maliciously and sadistically for the very purpose of causing harm.'" *Id.* (citing *Whitley v.*

*Albers*, 475 U.S. 312, 320-21 (1986)).

　　　　The inclusion of an objective prong, while generally correct in Eighth Amendment cases,

is in tension with Supreme Court precedent analyzing claims of excessive force against

incarcerated individuals. Indeed, the Court in *Hudson* qualifies the language quoted in *Staples* by

noting that whether something is "harmful enough" under the Eighth Amendment is governed by

"contemporary standards of decency," 503 U.S. at 8, but that:

> In the excessive force context, society's expectations are different. When prison
> officials maliciously and sadistically use force to cause harm, contemporary
> standards of decency *always are violated*. This is true whether or not significant
> injury is evident.

*Id.* at 9 (emphasis added).  Furthermore, the Supreme Court has reversed other circuits for

requiring a threshold higher than *de minimis* injury, ruling that the opinion in *Hudson* did not

merely lower the "significant harm" threshold of the objective test; it "aimed to shift the 'core

judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether it

was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" *Wilkins v.*

*Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson*, 503 U.S. at 7). The only objective measure of

harm *Hudson* arguably retained was a bar on recovery for *de minimis* injuries. 503 U.S. at 9-10.[7]

---

[7] Though even that is less than clear. *See, e.g.*, *Baldwin v. Tessier*, No. 05-cv-10898-DPW, 2006
WL 753244, at *4-*8 (D. Mass. Mar. 22, 2006) (holding that the inquiry bars *de minimis* uses of *force*,
not *de minimis* injuries); *accord Pereira v. Clarke*, No. 10-cv-10238-RWZ, 2010 WL 4181387, at *2 (D.

To be sure, in determining whether the conduct was malicious in the first place the court will consider the severity of the harm in light of the circumstances. And the First Circuit has held that there is no requirement of "serious injury." *Bastien v. Goddard*, 279 F.3d 10, 14-16 (1st Cir. 2002). Reconciling First Circuit precedent—which has never conclusively established a quantum of harm above *de minimis* harm—and Supreme Court precedent, the Court determines that the only quantum of harm that must be alleged in excessive force cases against incarcerated individuals is that it is more than *de minimis*.

Defendants argue they are entitled to qualified immunity for all excessive force claims. In the First Circuit, the qualified immunity analysis consists of determining whether the allegations "make out a violation of a constitutional right" and, if so, "whether the right was clearly established at the time of the defendant's alleged violation." *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019). "Where a plaintiff alleges both a § 1983 excessive force claim and common law claims for assault and battery, our determination of the reasonableness of the force used under § 1983 controls our determination of the reasonableness of the force used under the common law assault and battery claims." *Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010). Therefore, those claims rise and fall together.

### a.   Officers Colston and Carpeno

The plaintiff alleges that Officers Colston and Carpeno used excessive force when they punched his head while he was handcuffed and in leg irons and not resisting until he lost consciousness, and continued to do so after he lost consciousness. To determine if this meets the "subjective" standard of excessive force, the Court needs only to return to the facts of *Hudson*:

> McMillian then placed Hudson in handcuffs and shackles, took the prisoner out of his cell, and walked him toward the penitentiary's "administrative lockdown"

---

Mass. Oct. 20, 2010); *Cutts v. Dennehy*, No. 07-cv-10587-GAO, 2010 WL 1325465, at *9 (D. Mass. Mar. 31, 2010).

> area. Hudson testified that, on the way there, McMillian punched Hudson in the mouth, eyes, chest, and stomach while Woods held the inmate in place and kicked and punched him from behind.

503 U.S. at 4. The Supreme Court held that conduct met the standard of "clearly excessive and occasion[ing] unnecessary and wanton infliction of pain." *Id.* at 5. That conduct is not appreciably different from the conduct alleged in the complaint. Both prisoners were in handcuffs and leg irons. Both prisoners were not resisting. Both prisoners were in the midst of a transport. And both prisoners were repeatedly beaten in the head. There was no reasonable justification to continue to use force, especially at the level alleged, after the prisoner had been handcuffed, shackled, and was not resisting. Finally, though this is not necessary for the analysis, plaintiff has supplied a motive: Officer Carpeno had threatened the plaintiff with extrajudicial punishment for his participation in the riot.

Defendants argue the use of force was reasonable because plaintiff was non-compliant and resisting the corrections officers. On a motion to dismiss, the Court cannot credit those factual disputes.

Turning to the "objective" prong, defendants also argue the injuries are *de minimis*. *De minimis* injuries in the First Circuit include a bloody lip, *Calabria v. Dubois*, 23 F.3d 394, at *2 (1st Cir. 1994) (unpublished), or shoving, pushing, and verbal abuse, *Leavitt v. Allen*, 46 F.3d 1114, at *3 (1st Cir. 1995) (unpublished). Courts in this district have considered *de minimis* two brief kicks, *Hernandez v. Ashe*, 745 F. Supp. 2d 15, 18-19 (D. Mass. 2010), or verbal threats, *Mattei v. Dunbar*, No. 13-cv-12195-FDS, 2015 WL 926044, at *4 n.3 (D. Mass. Mar. 4, 2015). Furthermore, a court in this district noted a single shove—in context—can rise beyond a *de minimis* injury. *Carter v. Symmes*, No. 06-cv-10273-PBS, 2008 WL 341640, at *5 (D. Mass. Feb. 4, 2008). Again, returning to *Hudson*, the Supreme Court found "bruises, swelling, loosened

teeth, and a cracked dental plate" are not *de minimis*. 503 U.S. at 10. Accordingly, the Court finds that bruises, swelling, and repeatedly falling into unconsciousness for the next several hours are not *de minimis* injuries, regardless of any disputes regarding the consequences to plaintiff's long-term vision.

As such, plaintiff has sufficiently alleged a violation of the Eight Amendment with regard to Officers Colston and Carpeno.

Having established a violation, the plaintiff must show the law was clearly established at the time of the violation; this requires both an inquiry into the clarity of the law itself as well as an inquiry into "whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Penate*, 944 F.3d at 366 (citing *Drumgold v. Callahan*, 707 F.3d 28, 42 (1st Cir. 2014)).

Again, the Court need not go further than *Hudson*. As early as 1992 it was firmly established that the Eighth Amendment protected inmates against uses of force that did not further any sort of disciplinary or safety rationale and merely inflicted pain. Indeed, this Court held as much seven years ago. *Perry v. Dickhaut*, 125 F. Supp. 3d 285, 298 (D. Mass. 2015). As to whether a "reasonable defendant" would have known his conduct was unconstitutional, the Court reiterates that there is nothing novel about the facts in this case. An inmate was allegedly restrained, did not resist, and was repeatedly punched in the head, such that he lost consciousness—during which the beating did not stop. The Court breaks no new ground in holding that such a use of force is a violation of the Eight Amendment's prohibition on cruel and unusual punishment.  The officers were clearly on notice that this conduct was unconstitutional.

The motion to dismiss as to Officers Colston and Carpeno is *denied*.

      *b.  Sergeant Tetreault*

11

The plaintiff's complaint alleges in the facts portion that Sergeant Tetreault used O.C. spray, but lists Lieutenant Gearin in "Count Two" as the individual who used O.C. spray. The Court assumes that the facts section is correct and the claim is intended to be against Sergeant Tetreault. Because both defendants will continue to be parties to this litigation after the motion to dismiss, it will not prejudice Tetreault to have this claim continue against him even if it turns out in discovery it was Lieutenant Gearin who used the O.C. spray.

The only basis for an excessive force claim against Sergeant Tetreault is that he sprayed O.C. spray into plaintiff's temporary cell to disable him. At the time O.C. spray was used, plaintiff was in a temporary 4' x 6' cell, but was not in handcuffs or leg irons. Plaintiff does not allege he was resisting at the time O.C. spray was used. The plaintiff admits that he had protested when he was initially moved to the temporary cell, and the Court cannot credit plaintiff's legal conclusion that the force was "unjustified" without additional details. However, drawing all reasonable inferences in favor of the plaintiff, five minutes had passed from his last protestation and the use of the O.C. spray. The Court concludes that the complaint alleges the officers used the O.C. spray to preemptively disable the plaintiff, not in response to any attempt to resist or as the result of contemporaneous non-compliant behavior.

Although not as clear cut as the claims against Officers Colston and Carpeno, plaintiff has alleged a violation of the Eighth Amendment. The primary inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Staples*, 923 F.3d at 13 (citing *Whitley*, 475 U.S. at 320-21)). The plaintiff concedes in his complaint that the purpose of the OC spray was to "disable" him. Defendants argue that there is no proof the use of force was used *merely* to harm him. In

considering the "subjective" prong, whether the force was "malicious," the Court determines whether the use of force is proportionate to the disciplinary interest. *Hudson*, 503 U.S. at 7.

In a similar case, a court in this district held that spraying O.C. spray into a cell, absent any sort of threat or misbehavior from the prisoner, was enough to allege an Eighth Amendment claim on a motion to dismiss. *Hinds v. Pepe*, No. 15-cv-10073-LTS, 2016 WL 1643742, at *6 (D. Mass. Apr. 25, 2016). The Court agrees: absent some indication of resistance or non-compliance from a prisoner, prison officers may not, consistent with the Eighth Amendment, use chemical sprays to disable an inmate merely to make extractions easier. Such an action is malicious, even if the malice is grounded tenuously in furthering discipline. To the "objective" prong, the complaint alleges that the O.C. spray "disabled" the prisoner. This is far from the shoves and pushes that courts in this district have held to be "*de minimis*."

Again, defendants insert facts in their response that either were not in the complaint or contradict the complaint; claiming that the plaintiff "refused to comply with Officers' orders to be moved" and "continued to not comply with Officer's orders." After discovery, defendants may be entitled to summary judgment, but they cannot insert those disputes into the analysis at this stage of the proceedings.

As to qualified immunity, the law was clear in 2018 that malicious use of force not in service of disciplinary interests would violate the constitution. In determining whether a reasonable defendant would have known their conduct violated that standard, a survey of related case law is helpful. First, as referenced above, a court in this district, concerning the DOC, held that using O.C. spray against a prisoner in a cell who does not pose a risk or threat is unconstitutional. A survey of other cases concerning the use of O.C. spray show that courts have upheld the use of O.C. spray where an inmate poses a threat to safety, is fighting, or disobeys an

order. *Grissom v. Palm*, No. 21-3194, 2022 WL 3571410, at \*6 (10th Cir. Aug. 19, 2022);

*Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020); *Hernandez v. Woods*, 731 F. App'x

643, 645–46 (9th Cir. 2018); *Banks v. Meck*, 531 F. App'x 205, 207-08 (3d Cir. 2013); *Scroggins

v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009); *Thomas v. Comstock*, 222 F. App'x 439, 442

(5th Cir. 2007); *Fischer v. Ellegood*, 238 F. App'x 428, 432 (11th Cir. 2007). The Court could

not locate a single case concerning an instance where O.C. spray was used to preemptively

disable an inmate who was not resisting officers or somehow not complying. To the contrary,

there is precedent the use of O.C. spray is not justified against inmates who "passively resisted"

officers. *Guy v. Metro. Gov't of Nashville & Davidson Cnty.*, 687 F. App'x 471, 476 (6th Cir.

2017) (applying Eighth Amendment standards to pre-trial detainee). A reasonable officer would

know that using O.C. spray without any misbehavior or threat from the inmate would violate the

Eighth Amendment.

Therefore, the motion to dismiss as to Sergeant Tetreault is *denied.*

### c.   *Superintendent Phillips*

Superintendent Phillips is alleged to have explicitly authorized both the O.C. spray and

the use of force to extract the plaintiff. Although the complaint is not clear, the Court assumes,

based on plaintiff's description of the events and the failure to intervene claim discussed below,

that Superintendent Phillips was not physically present for any of the events.

Supervisory liability may not be established by the doctrine of respondeat superior in §

1983 cases. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Instead, after plausibly alleging

a primary violation, the plaintiff must then "forge an affirmative link between the abridgement

and some action or inaction on the supervisor's part." *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir.

2019). The primary violation has been plausibly alleged for both violations, as discussed above.

14

To show the "affirmative link," the plaintiff must allege "behavior that constitutes 'supervisory encouragement, condonation or acquiescence[,] or gross negligence . . . amounting to deliberate indifference.'" *Id.* at 14-15 (citing *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 47 (1st Cir. 2012)). Deliberate indifference requires "(1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016) (citations omitted).

There is no dispute that Superintendent Phillips authorized the use of force, and the alleged use of force amounted to an Eighth Amendment violation. However, the complaint fails to allege—nor are there any reasonable inferences to the contrary—that Superintendent Phillips was on notice that the use of force requested was unjustified. He authorized the use of O.C. spray, but there is no allegation he knew the plaintiff was not resisting. There is no allegation that he had any knowledge "that a substantial risk of serious harm exist[ed]." Nor is there any indication he sanctioned or even knew about the specific use of force against the plaintiff after he was handcuffed and put in leg irons. The Court cannot credit the plaintiff's bare allegation that the authorization was unjustified.

Therefore, the motion to dismiss as to Superintendent Phillips is *granted*.

### 3. Duty to intervene (Lieutenant Gearin, Officer Stanhope, Sergeant Tetreault, Officer Badjo, and Officer Bourgeois – "bystander defendants")

Unlike the excessive force claim, the duty to intervene arises from the Fourteenth Amendment's substantive due process doctrine. *Davis v. Rennie*, 264 F.3d 86, 97-98 (1st Cir. 2001). The plaintiff must adequately allege that the defendants (1) were present, (2) actually observed the excessive force, (3) were in a position to realistically prevent the use of excessive force, and (4) there was sufficient time to prevent the use of excessive force. *Id.* at 97-98 (citing *Gaudreault v. Salem*, 923 F.2d 203, 207 n. 3 (1st Cir. 1990)). There is no requirement of a

15

showing that the action "shocks the conscience" when the incarcerated individual is not resisting the force, as alleged here. *Id.* at 98-99. And a showing of deliberate indifference is only required if "actual deliberation is practical." *Id.* at 101 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Because the use of force was relatively short, the Court concludes the deliberate indifference standard is inapplicable.

The complaint adequately alleges that the bystander defendants (1) were present and (2) actually observed the excessive force. Any requirement implicit in the second prong that a reasonable officer would recognize the force as excessive is satisfied by the qualified immunity analysis above because any reasonable officer would recognize the force allegedly applied by Officers Colston and Carpeno was excessive, whether applying it themselves or witnessing it.

An attack that is over "in a matter of seconds" cannot normally give rise to liability under a duty to intervene claim because it is not realistic to expect other officers to quickly intervene—the third and fourth prongs fail. *Gaudreault*, 923 F.2d at 207 n. 3. However, the analysis is context-specific and depends on the proximity of the officers and the length of the attack. *See, e.g.*, *Davis*, 264 F.3d at 104 (refusing to overturn a jury's determination that defendants had an opportunity to intervene in an attack that only lasted a few seconds).The allegation here is that the bystander defendants failed to intervene after Officers Colston and Carpeno used excessive force against the plaintiff by repeatedly punching him in the head after he had been disabled by the O.C. spray, handcuffed and put in leg irons, and was no longer resisting. Plaintiff alleges he was punched 15-20 times, lost consciousness, and when he regained consciousness, was still being punched in the head. The description is not of an attack that lasted a few seconds—there was time to intervene. Furthermore, the bystander defendants were "gathered around the door to the cell" and outnumbered Officers Carpeno and Colston by over two-to-one and therefore were

in a realistic position to intervene.  Given the facts alleged, the plaintiff has made out an

adequate violation of his substantive due process rights.

The defendants correctly point out that if there were no violation by Officers Carpeno and

Colston, there can be no failure to intervene. However, a violation has been adequately alleged

against Officers Carpeno and Colston. The defendants also argue that the plaintiff has not

adequately alleged *how* the defendants could have intervened. Given the facts alleged, the Court

has no trouble inferring that five officers in tactical gear standing a few feet away could have

prevented—or at least mitigated—the excessive force used against the plaintiff by Officers

Colston and Carpeno.

The motion to dismiss against the bystander defendants is *denied*.

4. *Intentional Infliction of Emotional Distress ("IIED") (Officers Carpeno and Colston)*

To make out a claim for IIED in Massachusetts, the plaintiff must show:

> (1) that the [defendant] intended to inflict emotional distress or that he knew or
> should have known that emotional distress was the likely result of his conduct; (2)
> that the conduct was extreme and outrageous, was beyond all possible bounds of
> decency and was utterly intolerable in a civilized community; (3) that the actions
> of the defendant were the cause of the plaintiff's distress; and (4) that the
> emotional distress sustained by the plaintiff was severe and of a nature that no
> reasonable man could be expected to endure it.

*Limone v. United States*, 579 F.3d 79, 94 (1st Cir. 2009) (citing *Agis v. Howard Johnson Co.*,

371 Mass. 140, 144-45, 355 N.E.2d 315, 318-19 (1976)).

Given the excessive force claim against Officers Carpeno and Colston required the Court

to find that the force was used "for the very purpose of causing harm," the first prong is easily

met.

The defendants are correct that it is not "enough that the defendant has acted with an

intent which is tortious or even criminal, or that he has intended to inflict emotional distress," to

17

meet the standard put forth in the second prong. *Foley v. Polaroid Corp.*, 400 Mass. 82, 99, 508 N.E.2d 72, 82 (1987), Nonetheless, beating a prisoner into unconsciousness while he is not resisting and in handcuffs and leg irons is "utterly intolerable in a civilized community." *Cf. Hudson*, 503 U.S. at 8 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated"). To the third prong, there is no serious dispute that it was this beating, rather than something else, that caused plaintiff's distress.

However, it is not clear that plaintiff has adequately pleaded the severity of emotional distress required to uphold an IIED claim under the fourth prong. Plaintiff claims that he has "sustained . . . psychological trauma" and "continues to experience . . . psychological damage." There is precedent suggesting that the emotional damage must be quantified with some exactness. *See, e.g.*, *Kennedy v. Town of Billerica*, 617 F.3d 520, 530-31 (1st Cir. 2010). However, in cases where there is a physical attack and relatively severe injuries, emotional distress may be inferred. *Poy v. Boutselis*, 352 F.3d 479, 485–86 (1st Cir. 2003). Because the plaintiff is incarcerated, the Court will not fault him for failing to provide specific psychological reports. Although plaintiff did not receive the lasting disfigurement that the plaintiff in *Poy* suffered, the extreme nature of the beating is sufficient to meet the fourth prong of an IIED claim.

Finally, "[t]he defendant must have acted without privilege." *Polay v. McMahon*, 468 Mass. 379, 386, 10 N.E.3d 1122, 1129 (2014) (citations omitted). Because the allegations adequately make out a constitutional violation, the use of force was not privileged.

Therefore, the motion to dismiss the IIED claim is *denied*.

## Conclusion

For the reasons stated above:

The motion to dismiss Count One is ___*granted*___.

The motion to dismiss Count Two as to Superintendent Phillips is ___*granted*___, and the motion to dismiss count 2 as to all other defendants is ___*denied*___.

The motion to dismiss Count Three is ___*denied*___.

The motion to dismiss Count Four is ___*granted*___.

The motion to dismiss Count Five is ___*granted*___.

The motion to dismiss Count Six is ___*denied*___.

The motion to dismiss Count Seven is ___*denied*___.


**SO ORDERED**

                                                      ___*/s/ Timothy S. Hillman*___
                                                      **TIMOTHY S. HILLMAN**
                                                      **DISTRICT JUDGE**